AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Nov 30, 2022
OFFICE OF THE CLERK

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.   6:22-cm-00023
GPS LOCATION INFORMATION FOR T-MOBILE USA )
SUBSCRIBER NO. 501-293-5773 & VERIZON )
WIRELESS SUBSCRIBER NO. 501-446-0886 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Certain GPS location info. of cellular telephone assigned call no. 501-293-5773, service provider is T-Mobile USA and cellular telephone assigned call no. 501-446-0886, service provider is Verizon Wireless, further described in Att. A & C.

located in the ___Western___ District of ___Arkansas___, there is now concealed *(identify the person or describe the property to be seized)*:
Described in Attachments B & D

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841; & | - Distribution of a Controlled Substance (Methamphetamine) |
| 21 USC 846 | - Conspiracy to Distribute a Controlled Substance (Methamphetamine) |

The application is based on these facts:
See attached Affidavit in Support of An Application for Search Warrant

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Joshua Laster (telephonically)
*Applicant's signature*

Special Agent Joshua Laster, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11-30-22

City and state: ~~Hot Springs~~ Texarkana, AR

*Judge's signature*

United States Magistrate Judge Barry A. Bryant
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

| | |
|---|---|
| IN RE: GPS LOCATION INFORMATION FOR T-MOBILE USA ASSIGNED CELLULAR TELEPHONE NUMBER 501-293-5773 (**Target Phone 1**) AND VERIZON WIRELESS ASSIGNED CELLULAR TELEPHONE NUMBER 501-446-0886(**Target Phone 2**). | CASE NO. 6:22-cm-00023 <br><br> **FILED UNDER SEAL** |

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Joshua Laster, Special Agent (SA) with the United States Department of Justice Drug Enforcement Administration (DEA), Little Rock District Office being duly sworn and deposed, state the following:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this Affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the Global Positioning System (GPS) location of the cellular telephone assigned call numbers:

    a. (501) 293-5773 (hereinafter "**Target Phone 1**") whose service provider is T-Mobile USA, subscribed to "Jennifer M. Rino" and "Melissa Kendel" at 4160 Malvern Road, Lot 23, Hot Springs, AR 71901, believed to be used by MELISSA LANE (aka Melissa Kendel). **Target Phone 1** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

    b. (501) 466-0886 (hereinafter "**Target Phone 2**") whose service provider is Verizon Wireless, unknown subscriber, believed to be used by PATRICK EVERAGE.

1

**Target Phone 2** is described herein and in Attachment C, and the location information to be seized is described herein and in Attachment D.

2. I am an "investigative or law enforcement officer" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is authorized by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code and Title 21, United States Code.

3. I have been employed with the DEA since October 2011 and I am currently assigned to the DEA Little Rock District Office (LRDO). In February 2012, I completed the 17-week Basic Agent Training Academy at the DEA Justice Training Center located in Quantico, VA, where emphasis in training included basics of report writing, law, interview and interrogation techniques, automated information systems, and drug recognition, as well as leadership and ethics. I have been involved in numerous aspects of narcotics investigations, including but not limited to conducting controlled purchases of narcotics; utilizing confidential sources; debriefing defendants, witnesses, and informants; conducting surveillance and undercover operations; preparing and executing search warrants; analyzing documentary and physical evidence, analyzing phone toll records; and conducting wiretap investigations. My current responsibilities are conducting investigations of drug-trafficking offenses.

4. Prior to my employment with the DEA, I served seven (7) years as a police officer. As a police officer, I was responsible for responding to calls of service; investigating traffic accidents; enforcing local, state and federal laws; preparing reports and affidavits; apprehending wanted subjects; and executing arrest and search warrants. I also made numerous misdemeanor and felony arrests for violations of Arkansas criminal statutes relating to controlled substances.

5. In connection with my official DEA duties, I investigate criminal violations of the federal narcotics laws, including but not limited to Title 21, United States Code, Sections 841, 843, 846, and 848; money laundering laws, including Title 18, United States Code, Sections 1956 and 1957; and firearm laws, including Title 18, United States Code, Sections 922 and 924. I have also been involved in various types of electronic surveillance and in the debriefing of defendants, witnesses, informants, and others who have knowledge of narcotics trafficking. I have participated in investigations resulting in the arrest of numerous drug trafficking suspects and in the seizure of substantial quantities of illegal narcotics and proceeds of narcotics sales.

6. I have participated in investigations involving the interception of wire and electronic communications and the use of video surveillance. I am familiar with the manner in which narcotics traffickers and money launderers conduct their operations, including but not limited to their methods of importing and distributing controlled substances; their use of telecommunication devices, to include cellular telephones and digital display paging devices; their use of counter surveillance techniques; and their use of numerical codes and coded and/or cryptic language, words, and references to conduct their transactions.

7. The information in the Affidavit is based on my personal involvement in the investigation of this case; law enforcement reports, records, and interviews; information received from other law enforcement agents; my experience and training; and the experience of other agents. Because of this Affidavit's limited purpose, it does not contain all of the facts known to me or other law enforcement officers about the investigation. Specifically, I have set forth only those facts that I believe are necessary to establish probable case for a search warrant authorizing the disclosure of location-based electronic communications data.

8. The information contained in this Affidavit is based upon information obtained from Sources of Information, a Hot Springs Police Department (HSPD) Confidential Source (CS) as well as the investigation into MELISSA LANE conducted by your affiant, other agents and Task Force Officers (TFOs) with the DEA Little Rock District Office, and investigators from the Hot Springs Police Department (HSPD), public source documents, and criminal databases.

9. I submit that, based on the facts outlined below, probable cause exists to believe that the Requested Information will constitute or lead to evidence of offenses involving conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846 (the TARGET OFFENSES), as well as the identification of individuals who are engaged in the commission of these offenses. As such, I also submit that the Requested Information will help law enforcement identify MELISSA LANE's whereabouts in order to law enforcement to apprehend her on an outstanding federal arrest warrant issued by the Western District of Arkansas.

**PROBABLE CAUSE**

10. In April 2021, your affiant developed a DEA confidential source (CS) who identified LANE as a multi-pound to multi-kilogram methamphetamine (meth) distributor living and operating in Hot Springs, AR. The CS provided addresses and telephone numbers utilized by LANE at the time. The CS also stated he/she was purchasing approximately four (4) ounces (a quarter pound) of meth from LANE during each meeting. Between April 2021 and May 2021, DEA Agents/TFOs and Hot Springs Police Department (HSPD) investigators conducted two controlled purchase of meth from LANE, four ounces each time, utilizing the DEA CS.

11. Between April 2021 and September 2021, agents acquired warrants authorizing GPS data location of LANE's cellular telephone she was using at the time and installed court authorized GPS tracking devices on vehicles she was utilizing during this time period. Agents identified suspected meth customers and co-conspirators of LANE and identified a storage locations where she was suspected in storing her supply of meth and drug proceeds. Agents also observed LANE travel to Houston, Texas where she was suspected of meeting with her source of supply to acquire additional shipments of meth to transport back to Arkansas.

12. On September 29, 2021, your affiant learned that LANE, along with her boyfriend (also co-conspirator) at the time, BURLEY VANDERPOOL, were arrested by bounty hunters and law enforcement for outstanding warrants in Malvern, Arkansas. It was discovered that LANE was taken into custody based on a bond revocation warrant issued by the Montgomery County, Texas, Sheriff's Office that originated from a previous arrest for possession of meth in Montgomery County (Conroe, Texas) in March of 2021. LANE was transported back to the Montgomery County Sheriff's Office Detention Center where she remained until her case was adjudicated and she was transferred to the Texas Department of Criminal Justice Corrections System. LANE was sentenced to two (2) years in the Texas Department of Criminal Justice Corrections System and eligible for parole in August 2022.

13. In March 2022, your affiant and other DEA TFOs interviewed LANE at the Linda Woodman Unit of the Texas Department of Criminal Justice (TDCJ) Corrections facility located in Gatesville, Texas. Prior to any questioning, your affiant advised LANE of her rights per a DEA-13 Advice of Rights Form. LANE signed the form stating she understood her rights and would answer agents' questions without an attorney present. During the interview, LANE admitted to distributing meth and utilizing sources of supply from Mexico. LANE explained her sources of

5

supply coordinated shipments of meth that were transported across the Texas/Mexico border by couriers to cities such as Houston, Texas, and Dallas, Texas. She, or others on her behalf, would then travel to those cities to acquire shipments of meth to transport back to Hot Springs, AR. LANE also identified a second subject, who she called "Truck Driver," who was also utilizing the same source of supply in Texas and transporting shipments of drugs from south Texas to Arkansas. LANE identified telephone number 501-592-1396 used by "Truck Driver" and added that he was a black male that resided somewhere in the Pine Bluff, AR, area. LANE believed "Truck Driver" to drive semi tractor-trailers and commercial vehicles on a regular basis and was transporting shipments of drugs in commercial vehicles from South Texas to Central Arkansas. LANE also admitted that she had approximately seven kilograms of methamphetamine that was left in her RV during her arrest on September 21, 2021. She stated that DANIEL VANDERPOOL, BURLEY VANDERPOOL's brother, obtained the seven kilograms of methamphetamine and transported them to "Truck Driver" in Pine Bluff, AR. Your affiant corroborated this event through jail phone calls obtained on BURLEY VANDERPOOL who was incarcerated at the Saline County Detention Center at the time.

14. On May 18, 2022, your affiant obtained a search warrant, issued by the Honorable Edie R. Ervin, Unite States Magistrate Judge of the Eastern District of Arkansas, authorizing the collection of GPS location information on telephone number 870-592-1396. On May 26, 2022, you affiant obtained GPS location information on 870-592-1396 depicting the device and user to be in the area of 24415 AR-365 N, North Little Rock, AR 72113. Your affiant observed a dark gray 2021 GMC Sierra 2500 Denali truck bearing Arkansas registration 031ZYK parked at that location that coincided with the GPS location of 870-592-1396. Your affiant and other DEA agents/TFOs conducted surveillance of the dark gray 2021 GMC Sierra 2500 Denali truck and

later coordinated with a Maumelle Police Officer to conduct a traffic stop of the vehicle to identify the driver. A traffic top was conducted of the vehicle and the Maumelle Police Officer identified the driver as RONALD MURPHY Jr. through an issued Arkansas driver's license. MURPHY's Arkansas driver's license showed to be a class A driver's license allowing him to legally operate semi tractor-trailer and commercial vehicles, which coincided with LANE's statement of MURPHY being a "Truck Driver."

15. On August 16, 2022, your affiant contacted officials from the Texas Department of Criminal Justice to inquire on LANE's release. Your affiant learned that LANE was released on early parole from the Texas Department of Criminal Justice on July 28, 2022. Your affiant also learned that LANE first reported to her parole officer on July 29, 2022, and on July 31, 2022, LANE cut her ankle monitor off and absconded. On the same day, the Texas Department of Criminal Justice Parole Board issued a full extradition warrant for LANE for absconding.

16. On August 16, 2022, your affiant contacted a source of information (SOI) that has provided information on LANE in the past. The SOI stated LANE returned to Arkansas on or about August 2, 2022. The SOI reported that LANE acquired her black Mercedes from a salvage yard in Malvern, Arkansas where it was stored while she was in prison in the Texas Department of Criminal Justice. The SOI stated that LANE later acquired a dark blue BMW that she is currently driving. The SOI later reported that LANE was using telephone number 501-722-7033 through an unknown internet based communication application.

17. Your affiant then acquired detailed toll records in response to an administrative subpoena on telephone number 501-628-1761 used by LANE's daughter, CAILEY BROCK, which was identified during the investigation into LANE. You affiant learned that BROCK was in contact with 501-722-7033 on a regular basis, starting in early August of 2022, and which

coincided with LANE's release from Texas Department of Criminal Justice. Your affiant researched 501-722-7033 and learned that service for the 501-722-7033 was provided by Verizon Wireless.

18. On August 22, 2022, your affiant obtained a search and search warrant authorizing the collection of GPS data on the 501-722-7033, authorized by the Honorable Judge Lynn Williams, Garland County, Arkansas Circuit Court Judge. On the same day, your affiant executed and served the aforementioned warrant to Verizon Wireless to begin the collection of GPS data on the 501-722-7033. On August 23, 2022, through September 21, 2022, your affiant acquired GPS data on the 501-722-7033 which showed the device to be located in the area of McAllen, Texas. The 501-722-7033 remained in the area of McAllen, Texas the entire time GPS data was collected. GPS data showed that 501-722-7033 was located in Texas in a rural area west of McAllen, with radius' 3000 and 4800 meters which made it difficult to locate LANE's actual location. HSPD investigators later spoke to a HSPD CS who stated he/she heard that LANE was residing in Mexico to avoid apprehension. Your affiant later forwarded the GPS data of 501-722-7033 and other information pertaining to LANE to agents in the DEA McAllen office in attempt for them to locate LANE but were unsuccessful in locating LANE.

19. On September 20, 2022, TFO Michael McClain testified before the Grand Jury of the Western District of Arkansas (WDAR) regarding controlled purchases of meth conducted from LANE during this investigation. The Grand Jury of the WDAR issued a True Bill charging LANE in a two (2) count Indictment regarding the distribution of methamphetamine (in violation of Title 21, U.S.C. Sections 841(a)(1) and 841 (b)(1)(A)(viii)). A subsequent federal arrest warrant was issued for LANE reflecting the aforementioned violations.

20.     On October 26, 2022, HSPD investigators debriefed the HSPD CS who stated he/she has been in contact with LANE. The HSPD CS advised that LANE is continuing to utilize the 501-722-7033 and indicated to the HSPD CS that she was back in Arkansas. The HSPD CS stated he/she spoke to another individual who had communicated with LANE via Facebook and showed the HSPD CS the conversation that person had with LANE. According to the HSPD CS, in the Facebook conversation, LANE had informed the other unknown individual that she was currently staying in the Pine Bluff, AR area. The HSPD stated the last time he/she had communicated with LANE was on or about October 22, 2022 and again, LANE indicated that she was back in Arkansas.

21.     On October 28, 2022, your affiant obtained a state search and seizure warrant, issued by the Honorable Melanie Martin, Little Rock District Court Judge, authorizing the collection of GPS location information on telephone number 501-722-7033. From November 1, 2022, at approximately 2243 hours through November 14, 2022, at approximately 1400 hours, attempted collection of GPS coordinates of telephone number 501-722-7033 were made from Verizon Wireless with no GPS results due to the number being terminated or the account being closed.

22.     On November 15, 2022, your affiant spoke to the HSPD CS telephonically regarding new information on LANE and PATRICK EVERAGE. According to the HSPD CS, EVERAGE has supposedly replaced LANE as a multi-kilogram methamphetamine supplier in the Hot Springs, AR area. The HSPD CS stated that LANE introduced EVERAGE to MURPHY in Pine Bluff and is traveling to Pine Bluff, AR approximately every two to three days, acquiring two to three kilograms of methamphetamine at a time. Due to LANE introducing EVERAGE to MURPHY, EVERAGE has to pay LANE a fee for every kilogram of methamphetamine sold. The

HSPD CS also provided telephone number **Target Phone 2** (501-446-0886) as a number used by EVERAGE. Your affiant submitted an administrative subpoena on **Target Phone 2** to Verizon Wireless and the results of the subpoena are pending. However, your affiant queried **Target Phone 2** through open sources and financial sources which showed that **Target Phone 2** is being utilized by EVERAGE. Based on this and information from the HSPD CS, I believe that **Target Phone 2** is being used by EVERAGE. Additionally, the HSPD CS stated EVERAGE is living at 458 Bittersweet Lane, Royal, Arkansas with his girlfriend, HEATHER JOBE. According to the HSPD CS, EVERAGE utilizes three different vehicles, a tan Honda Accord, a white GMC pickup and a white GMC Envoy. You affiant found through a query in the Arkansas Crime Information Center (ACIC) that HEATHER JOBE has a 2008 Gold Honda Accord and a 2011 white Chevrolet pickup registered to her with current registration. A query of EVERAGE's name in ACIC showed that he has a 2002 white Chevrolet pickup registered to him at 458 Bittersweet Lane, Royal, AR with current registration, expiring in November 2023.

23.     The HSPD CS also provided **Target Phone 1** (501-293-5773) as a new number utilized by LANE. On November 16, 2022, your affiant received subscriber records and toll records on **Target Phone 1** from T-Mobile USA in response to an administrative subpoena. A subscriber report obtained from T-Mobile USA showed that **Target Phone 1** was subscribed to "Jennifer M. Rino" at 4160 Malvern Road, Lot 23, Hot Springs, AR with "Melissa Kendel" being listed as an additional subscriber. Your affiant conducted toll analysis on **Target Phone 1** which showed it to be in contact with **Target Phone 2** (EVERAGE) and RONALD MURPHY (870-592-1396) from late October to the present. Toll analysis also showed that **Target Phone 1** was in contact with Cailey Brock, LANE's daughter, on a regular basis and is the second most dialed

number on **Target Phone 1**'s tolls. Based on toll analysis, the subscriber report, and information obtained from the HSPD CS, I believe that **Target Phone 1** is being utilized by LANE.

24. On November 21, 2022, your affiant obtained toll records from AT&T in response to an administrative subpoena for telephone number 870-592-1396 used by MURPHY. Toll records indicated MURPHY began communicating with **Target Phone 2** (EVERAGE) on or about September 24, 2022 and has maintained contact with **Target Phone 2** through November 17, 2022. This toll data corroborates and solidifies the information provided by the HSPD CS regarding EVERAGE utilizing MURPHY as a source of supply.

25. Based on the forgoing, your affiant believes that LANE is utilizing **Target Phone 1** and the Requested Information will lead law enforcement to locate LANE and arrest her pursuant to the Federal Arrest warrant issued by the Western District of Arkansas. Furthermore, as it pertains to **Target Phone 2**, I believed that EVERAGE is utilizing **Target Phone 2** and the Requested Information will help law enforcement gain valuable evidence regarding EVERAGE engaging in the activities described above. The Requested Information is necessary to determine the location of the users of the **Target Phone 1** and **Target Phone 2** so that law enforcement agents can attempt to establish patterns of criminal activity of the users, and assist agents in identifying locations used as stash houses, meet locations, and current residences associated with the users of the **Target Phone 1** and **Target Phone 2**.

26. Agents intend to utilize the location information from the **Target Phone 1** and **Target Phone 2** to track the user's movements. Information obtained from the **Target Phone 1's** and **Target Phone 2's** location would assist agents in identifying additional residences utilized by LANE and EVERAGE, identity, stash location(s), and potential co-conspirators. Based upon my training and experience, individuals engaged in the trafficking of narcotics generally keep their

cellular telephones with them to maintain contact with their sources of supply as well as their customers.

27.  In my training and experience, I have learned that T-Mobile USA and Verizon Wireless are companies that provide cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

28.  Based on my training and experience, I know that T-Mobile USA and Verizon Wireless can collect E-911 Phase II data about the location of the **Target Phone 1** and **Target Phone 2**, including by initiating a signal to determine the location of the **Target Phone 1** on T-Mobile USA's network, Target Phone 2 on Verizon Wireless' network, or with such other reference points as may be reasonably available.

29. Based on my training and experience, I know that T-Mobile USA and Verizon Wireless can collect cell-site data about the **Target Phone 1** and **Target Phone 2**, respectfully.

## AUTHORIZATION REQUEST

30. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

31. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Phone 1** and **Target Phone 2** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B and in Attachment D, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, pursuant to 18 U.S.C. § 3103a(b)(2), there is reasonable necessity for the seizure of the Location Information, as that term is defined in Attachment B. *See* 18 U.S.C. § 3103a(b)(2).

32. I further request that the Court direct T-Mobile USA to disclose to DEA officers and agents any information described in Attachment B that is within the possession, custody, or control of T-Mobile USA and request that the Court direct Verizon Wireless to disclose to DEA officers and agents any information described in Attachment D that is within the possession, custody, or control of Verizon Wireless. I also request that the Court direct T-Mobile USA and Verizon Wireless to furnish to DEA officers and agents all information, facilities, and technical

assistance necessary to accomplish the collection of the Location Information described in Attachment B and Attachment D, respectfully, unobtrusively and with a minimum of interference with T-Mobile USA's and Verizon Wireless' services, including by initiating a signal to determine the location of the **Target Phone 1** on T-Mobile USA's network, and **Target Phone 2** on Verizon Wireless' network, or with such other reference points as may be reasonably available, and at such intervals and times directed by the DEA. The DEA shall reasonably compensate both T-Mobile USA and Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

33. I further request that, after the search warrant is served on T-Mobile and Verizon Wireless, it be required for **30** days, to provide the DEA with the Location Information, on the **Target Phone 1** and **Target Phone 2** at any hour of the night or day, owing to the DEA's potential need for the Location Information at any time.

Respectfully Submitted:

/s/ Joshua Laster (telephonically)
Joshua Laster
DEA Special Agent
Little Rock District Office

Subscribed and sworn to before me on this 30th day of November, 2022.

Honorable Barry A. Bryant
United States Magistrate Judge
Western District of Arkansas

## ATTACHMENT A TO SEARCH WARRANT

### Property to Be Searched

The cellular telephone assigned call number (501) 293-5773 (**Target Phone 1**), subscribed to "Jennifer M Rino" and "Melissa Kendel" at 4160 Malvern Road, Lot 23, Hot Springs, AR 71901, believed to be used by MELISSA LANE (aka Melissa Kendel) whose wireless service provider is T-Mobile USA to obtain information about the GPS location of the **Target Phone 1** that is within the possession, custody, or control of T-Mobile USA.

The information about the GPS location of the **Target Phone 1** relates to an investigation involving violations of 21 U.S.C. §§ 841(a)(1) and 21 U.S.C. §§ 846 and to locate MELISSA LANE who is a fugitive from the Western District of Arkansas Federal Court.

## ATTACHMENT B TO SEARCH WARRANT

### Particular Things to be Seized and Location Information to be Disclosed

All information about the location of the **Target Phone 1** described in Attachment A during all times of day and night, for a period of **30** days, beginning on the date of compliance. "Information about the location of the **Target Phone 1**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A (hereinafter "Location Information").

To the extent that the Location Information is within the possession, custody, or control of T-Mobile USA, T-Mobile USA must: (1) disclose the Location Information to DEA officers and agents; (2) furnish the DEA all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the **Target Phone 1** on T-Mobile USA's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government; and (3) provide the DEA with the GPS Location Information on the **Target Phone 1** at any hour of the day or night based upon the need for the DEA to be able to locate the **Target Phone 1** at any time. The DEA shall compensate T-Mobile USA for reasonable expenses incurred in furnishing such facilities or assistance.

Pursuant to 18 U.S.C. § 3103a(b)(2), the Court finds reasonable necessity for the seizure of the Location Information, sufficient to support delayed notification. This warrant does not authorize the seizure of any tangible property.

## ATTACHMENT C TO SEARCH WARRANT

### Property to Be Searched

The cellular telephone assigned call number (501) 446-0886 (**Target Phone 2**), unknown subscriber, believed to be used by PATRICK EVERAGE whose wireless service provider is Verizon Wireless to obtain information about the GPS location of the **Target Phone 2** that is within the possession, custody, or control of Verizon Wireless.

The information about the GPS location of the **Target Phone 2** relates to an investigation involving violations of 21 U.S.C. §§ 841(a)(1) and 21 U.S.C. §§ 846.

## ATTACHMENT D TO SEARCH WARRANT

### Particular Things to be Seized and Location Information to be Disclosed

All information about the location of the **Target Phone 2** described in Attachment A during all times of day and night, for a period of **30** days, beginning on the date of compliance. "Information about the location of the **Target Phone 2**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment C (hereinafter "Location Information").

To the extent that the Location Information is within the possession, custody, or control of Verizon Wireless, Verizon Wireless must: (1) disclose the Location Information to DEA officers and agents; (2) furnish the DEA all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon Wireless' services, including by initiating a signal to determine the location of the **Target Phone 2** on Verizon Wireless' network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government; and (3) provide the DEA with the GPS Location Information on the **Target Phone 2** at any hour of the day or night based upon the need for the DEA to be able to locate the **Target Phone 2** at any time. The DEA shall compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

Pursuant to 18 U.S.C. § 3103a(b)(2), the Court finds reasonable necessity for the seizure of the Location Information, sufficient to support delayed notification. This warrant does not authorize the seizure of any tangible property.